v. East Penn Manufacturing Company No. 24-1046. Good morning, Mr. Mueller. Ready to proceed? When you are. May it please the court, my name is Michael Mueller. I represent the appellant, East Penn Manufacturing, and I've reserved three minutes for my rebuttal. I'd like to focus on the two issues the court asked us in the clerk's letter to focus on, the de minimis jury instruction and the issue of actual versus reasonable time. The de minimis jury instruction, which was jury instruction No. 19 in the joint appendix at page 427, wrongly placed the burden on East Penn. The burden is on a plaintiff, the person who is seeking to recover money. We have a number of other cases we rely on as well. Yes, Schaefer is one of our authorities. We've got this precedent, appellee side Evankovich, and your reply brief is a little cryptic on this. Page 41, note 17 says, other than consideration of which party is in control of information necessary to the claim, the Evankovich factors favor treating the de minimis doctrine as part of plaintiff's burden of proof. Can you unpack that? Yes, in fact, that's principally what I came here to address on this issue. I realized that both parties had given short shrift to Evankovich, so I'd like to address the five factors. Especially when you're talking to the judge who wrote it. Yes, indeed, that's one reason. On the first factor, is the issue framed as an exception to the statute's general prohibition? I'd like to make the point first that the de minimis doctrine is an exclusion. It's not one of the FLSA's exemptions found in sections 207 and 213. Mount Clements Pottery, the Supreme Court decision that first recognized the doctrine, treated the de minimis issue as part of the work week and compensable working time. That's at page 692 of the Supreme Court's decision. The Supreme Court called it a rule and a doctrine, never called it a defense. With the exception of one passing reference in this court's opinion, a de essentio, this court has never called it a defense. It's just called a doctrine or a rule. Okay, we do the same thing when it comes to mitigation of damages. We don't think of it as an affirmative defense. You don't have to plead it in the answer, and yet failure to mitigate damages, ordinarily the defendant has to take reasonable steps to limit it, or it limits the defendant's ability to recover. So why don't we view it like that? Maybe you don't have to call it an affirmative defense, but still, the shoe could be on the defendant's foot. Judge Bevis, it's never treated as a mitigation issue. I'm not saying this is a mitigation issue. I'm saying that like mitigation of damages, it needn't be pled in the answer, but the burden's still on the defendant. So all the courts that have looked at this have treated de minimis as an exclusion. In this court, for example, has treated exclusions and exemptions differently, and there's a reason for that. The affirmative defenses essentially are set forth in the statute in sections 207 and 213. There's a couple doctrines I can think of right off the top of the bat that this court has treated as exclusions. Integral and indispensable is a judge-made doctrine under the Portal Act, and in the first Tiger v. Precision drilling decision, which I recognize is unpublished, the court placed the burden on the employees to prove integral and indispensable. Another example is the exclusion for clothes changing in section 203-0 of the statute. That is expressly about donning and doffing. It is limited to unionized facilities, but this court in Turner v. City of Philadelphia also put the burden of proving that exclusion on the employees. Could we focus on Factor 2? The general scheme seems to say if an employee works, then you pay for the time. This looks like a carve-out from the pay the employee for the hour's work. Why doesn't Factor 2 favor the burden being on the defendant? The Supreme Court, of course, works not defined in the statute, so the Supreme Court started shaping a lot of this through judicial decisions. In Mount Clemens Pottery, it says you have to pay for compensable work that was unpaid, subject to the de minimis doctrine. That's the Mount Clemens Pottery case. Let's look at the statute. 206 says for this much time, you have to pay this minimum amount. 207a says you pay overtime for the one and a half times the regular rate employed. 211c talks about the employers keeping records of the wages, hours, and other conditions. All of them are based on time. This is a carve-out from the time someone worked. That would suggest that it's an affirmative defense. I don't think there's any court that's called it an affirmative defense except Judge Prater in the district court here. Whether we call it an affirmative defense or not, maybe it's not an affirmative defense that has to be pled in an answer or anything, but why wouldn't this suggest that the rule of the statute is track the hours worked, pay for the hours worked. This reads more like an exception to that rule. So there's nothing about the Supreme Court's decision in Mount Clemens Pottery. Okay. I'm asking about the statute. Okay. Well, the statute doesn't address the issue. I'll concede that. Okay. This is all judge-made law. The Supreme Court in that case remanded for a determination by the special master of whether there was any unpaid time after consideration of the de minimis doctrine. It did not put the burden on the employer, and the opinion seems in the last paragraph to squarely place the burden on the employees. You said that every court that's looked at this has considered it an exclusion, but isn't the majority rule at this point that the burden is on the employer? Isn't the who? The burden on the employer. The majority of the courts of appeals that have addressed this explicitly put the burden on the employer.  So I wouldn't say the majority of the opinions at all. Keller had one sentence on this issue. Keller said because it was raised as a defense, the burden is on the employer, and that's all it said. It cited a 1949 case about the de minimis doctrine. I'm quoting. It says, quote, or the employer, quote, bears the burden to show that the de minimis doctrine applies. Yeah. And then it cites a case from 1949. Basically, its reasoning was just because it's a defense, the burden is on the employer. And under the Ivakovich factors, we know that's not true because in Ivakovich, Peterson just cited Keller with no reasoning whatsoever. It's a Me Too, and you've got a Fifth Circuit case that's not precedential. Correct. That's right. You've got the Fourth and the Ninth that have also put it on the employer? So the Ninth Circuit ruled in a case that I don't think is in the brief called Ruddy v. Lojack of maybe a 2010 decision that has a footnote that says, in Anderson v. Montgomery's Pottery, the Supreme Court put the burden on the employer. That is just made up on a whole cloth. That is not what the Supreme Court said in that case. Why isn't that a reasonable reading of what the Supreme Court was doing? Because it starts with the basic, the burden on the employee is simply stated as the employee has the burden of proving he performed work for which he was not properly compensated. And then if there are inadequate records, the employer has to present evidence of the precise amount of work performed, or present evidence to negative the reasonableness of the inference to be drawn from the employee's record. So that's the second half of my comments. That's not about the liability issue. That's about burden shifting on the amount of damages. If the employer did not have records, as here, the employees have to prove by fair and reasonable inference the approximate amount of time they work. And if they carry that burden and convince the jury they've done so, the burden can then shift to the employer. We're not challenging that instruction in this case. We're saying that on the minimus doctrine, the Secretary of Labor had to prove it because it's just two sides of the same coin. They have to prove, the Supreme Court says you have to prove compensable working time that was not paid. And then it says it takes into account two factors, fairness and practicality, and says it would be unfair and impractical to require the employer to track time in light of industrial realities that can't be tracked. But it says that the employer is in a better position to keep track of that time than the employee. And that's the basis for the language about the employer's burden to negative the inference that the employer does. But that's on the damages issue, which I'm not talking about here. The minimus is not properly viewed as a damages issue. It's a defense to liability. And the Secretary's record keeping regulation, which is not about litigation. We're talking about more than $22 million here. Is there any way you qualified for de minimis? I mean, we're talking eight figures. So how are we even in de minimis territory? Let me say a couple of things about that. So de minimis is inherently fact-bound. And the jury got to that outcome because it was wrongly instructed on the actual versus reasonable time issue. That's my first point. A properly instructed jury could have found that we were paying a reasonable amount of time, that is the five minutes at the start of the shift and the ten minutes at the end of the shift. You think you might also win on de minimis. But if you're wrong on reasonable, then $22 million isn't de minimis. Well, I'd say two things about that. I would not agree with that, Your Honor. First of all, it's a three-factor test. The district judge took one of the factors away from us, regularity. But it goes to the amount of unpaid time, which you're right. If they were properly instructed on actual versus reasonable time, we're stuck with that number. But it was five and a half minutes a day, according to the Department of Labor, in a post-trial brief in the district court. And five and a half minutes a day is well under the ten-minute today that most courts recognize as de minimis. Can you divide and conquer and just say, oh, it's a few minutes here, a few minutes there? Or do we look at it in the aggregate and say eight figures, not de minimis? Well, you look at the minutes in the aggregate. And the second factor is administration. Minutes in the aggregate to get to $22.5 million, how many minutes is that? It's five and a half minutes a day. Five minutes, 34 seconds. No, no, no. In the aggregate, adding them all up, how many minutes gets you to $22.5 million? I have no idea. Nor does the jury. This is a compromise verdict, clearly. Nobody ever presented the numbers that way. But I would say this is a three-factor test. And the third factor is administrative practicality. The Secretary pleaded Administrator Practically Essentially in her complaint in paragraphs three to four. The Secretary went into this case intending to argue at trial that we could have kept track of the close changing time by using the punch clocks. And all the proofs at trial were on that issue. The Secretary listed most of her exhibits in her trial plan. She said she was offering for the de minimis factor. And there were tons of employees who were talking about the fact that punch clocks could not keep track of the dawning and dawning time because it's not done when anybody's watching them. And so I would argue that we could have won just on the administrative practicality prong alone if the jury had been properly charged. You want to talk about reasonable? Yes. On actual versus reasonable time. So this relates, of course, to the summary judgment ruling and the court's jury instructions 17 and 22. This issue first came up in Mount Clements Pottery where the Supreme Court said there should not be extra compensation for what it called roundabout journeys and personal activities. The Supreme Court tied that to compensable working time, a liability issue, not damages. And it said it's easily obtainable to obtain the minimum time in the ordinary situation. That is quite clearly the concept of reasonable time as the Eighth Circuit reasoned in the Lopez versus Tyson Foods case. In Mount Clements Pottery, the district court had used a formula and the Supreme Court recognized that in its opinion. And the last paragraph remanded without saying to avoid using a formula. The important point here, the Secretary concedes in a red brief at page 40 that the Supreme Court in that case permitted reasonable time backwage calculations for walking time. We think on that ground alone the court could reverse. In the Steiner case, which was the next dressing case in the Supreme Court, the court... But was the walking time determined to be non-compensable? I'm sorry? How is Mount Clements a matter here? Mount Clements a matter here because it's set forth... The majority thereafter determined to be non-compensable. But at the time of Mount Clements, the walking time was compensable. What happens by statute, the Portal Act made the walking time non-compensable, precedes a preliminary activity. But what the Supreme Court told us is if at the time we're looking at something, an activity is compensable, this is how you analyze it. And I think that still survives. But doesn't Alvarez tell us that walking or other activity, that you're looking at the actual amount of time? No, actually the Supreme Court never says actual time in that case. That case, in the district court, the district judge had a bench trial and awarded reasonable time for walking and also reasonable time for each article of clothing. Reasonable time can be used to reconstruct when you don't have the actual time figure. That's different from saying reasonable is the proper measure even when you know actually. I understand there are two different issues, but for example, the First Circuit in the Tom versus Barbara Foods case, which was part of the Alvarez case, they were consolidated at the Supreme Court. The First Circuit made the point that Steiner did not require compensation of actual time. And it also held a reasonable time, jury instruction, for liability. And the Supreme Court left that intact. In fact, the Supreme Court recites the Alvarez district court's numbers for reasonable walking time of 3.3 to 4.4 minutes. And so it's quite clear the Supreme Court is aware in all of these cases, Mount Clemens, Steiner, and Alvarez, that reasonable time was being used in the lower courts. And after Alvarez, the Eighth Circuit, which had an amicus brief from the Secretary of Labor arguing for an actual time standard, the Eighth Circuit rejected actual time. And in addition, in the Supreme Court, the Secretary filed an amicus brief saying reasonable time is consistent with a continuous workday. But the Supreme Court did not rule on this, did not pass on it. I agree. This reasoning was not on it. These were just argued to the court. Absolutely. It has never been presented squarely to the court. The measure of damages was not an issue in the Alvarez case. But we think the fact the Supreme Court keeps reciting Mount Clemens pottery means that that doctrine is the one I'm talking about is still viable. Mr. Mueller, we're here for your rebuttal. Thank you. May it please the Court. Jesse Grauman for the Acting Secretary of Labor. With me at Council's table is Jennifer Stocker and Elizabeth Kuschel. Before jumping into the two issues on which the Court directed the argument to focus, I did want to reinforce that given the undisputed evidence at trial that East Penn did not simply pay reasonable versus actual time and that the deficit was, as Judge Bibas mentioned, over $22 million, well in excess of any verdict that I think has been held to be de minimis, as we argued in our briefs. Even if East Penn were right and the jury should have been instructed in the manner in which East Penn desired, we believe that the verdict would have come out the same either way. That being said, we recognize that these questions could arise in other cases, and we urge this Court to affirm the district court on both of these legal issues so that these questions don't complicate cases in the future. And with regards to both of these – Which leads to a question. You argue that obviously it was – East Penn could have administered the tracking system. But without conceding anything, let's just assume for the sake of argument, it can't do it. Does that affect the question of whether the employer bears the burden of showing that time was de minimis? I'm giving you a counterfactual. If they were unable to measure the time, does that affect the burden of proof? Well, I think it's relevant to the burden of proof analysis because one of the factors that this Court identified in Ivankovich was who has the ability to – who is in possession of the information that can prove, one way or the other, the issue in question. And when the issue in question turns in part on administrative feasibility, it makes sense that the burden would fall on the employer to show whether or not it is or is not feasible. If that means that neither the employer nor the employee can easily do so, then are you in – can follow Judge Bibas's question, then you go from actual to reasonable assessments. But is that the right answer? That you would try to figure out what is the reasonable time as opposed to the actual time since neither party has the ability to do it in actual time? I think we recognize that a reasonable time can be used ex post as a remedial measure and has been used in that context in order to fashion a remedy for employees who are not properly compensated. But that's very different, as Judge Bibas mentioned earlier. But when it's ex post, then who has that burden when neither party can come up with the actual time? The two questions we have before us are intertwined. I think the burden of proof would still lie on the employer, regardless of whether or not that factor is in question, and that's for a few reasons. I think first principles, as Judge Bibas alluded to earlier, is that the FLSA stands for the principle that employees must be paid for the work that they perform by the hour, not that they must be paid for the amount of time that their employer believes the work should take, not that they should be paid for approximately what their employer thinks they were working. And de minimis is, of course, not in the statute at all. It is a rule carved out by courts, a non-statutory exception to that principle that says that despite performing otherwise compensable work, employees cannot recover. And so I think the most straightforward way to construe de minimis is that it's not saying that it is an exclusion from hours worked, the way the discipline is characterizing it, but rather it is an exception to the overall principle that employers have to pay for the hours worked. Isn't part of the problem here that it's sort of circular? Because we've got de minimis that is time that can't be not administratively feasible to calculate. If it is de minimis, then it's not compensable. The employee is supposed to put forward the evidence of actual work that was compensable work for which they weren't paid. But by definition, if it's de minimis, it wouldn't be included. So help us figure out which of these comes first. How are we supposed to think about what's compensable and what's de minimis? And what is the burden? Well, so first of all, I think that with regards to what's compensable, I think if let's say an employer is paying for five minutes and the employee works six. I don't think that six minutes suddenly does not become work simply because the employer decided not to pay for it. In contrast, you have things like preliminary and post-preliminary activities and clothes changing under a collective bargaining agreement. Those are excluded from work entirely. So I think it's hard not to call what's being done here work simply because it exceeded the amount of time that the employer was paying for it. And I think in terms of circularity, I think that does point to the fact that I think this question, that not only in our view does this question of who bears the burden, you know, did it not sway the jury one way or the other in this case? But I think in the vast majority of cases, it's really just going to be a factual question that the jury is going to answer one way or the other without a whole lot of regard for the burden of proof. This is a preponderance of the evidence issue. And this Court recognized in Ivanovich and in other cases that, you know, on preponderance of the evidence, it only really comes into play where the evidence is in equipoise. And again, as we've argued, we don't believe the evidence could be reasonably deemed to be in equipoise here. And so I think part of the reason that a number of, you know, you don't have a whole lot of precedent that really gets into the rationales one way or the other, is that this is simply not an issue that tends to come up because the question for the jury, and no one disputes that the jury was properly instructed on this in this case, is look at the factors and tell us if on balance, taking into account all of these factors, the work was de minimis. So here there's no dispute that this was, it was compensable work.  It's the extent to which there's overage beyond what was deemed reasonable and allocated for by the employer, right? That's the way East Penn would frame it. I think the way, you know, our position is that with regard particularly to the pre-shift time, that while East Penn purported to allocate a reasonable five minutes of time, they in fact did not allocate that time because they did not in fact observe or enforce the grace period that they put forth in their policies. And so that's why, again, why we believe that the de minimis issue is a little bit of a red herring here in the sense that we don't have to deal with de minimis to simply look at those five minutes or so of donning time and say East Penn was not paying for this time because everybody was doing their donning pre-shift, and by the time this donning period started, they were already producing batteries. And so I don't think we would frame it as simply the time that's at issue here is in excess of the reasonable time provided by East Penn because with regard to pre-shift, we don't believe that East Penn provided that time at all, and we believe that the record clearly reflects that given the wealth of the evidence that the grace period was simply, you know, it was basically a paper policy that few employees were aware of it, and even fewer, a minuscule percentage, actually testified to using it regularly. So that, I think, brings this case well outside the bounds of what could be considered de minimis. In terms of the burden, does the burden change depending on whether there are adequate records or not? Whether there are adequate records? So I think that Mount Clemens, of course, says that if there are no adequate records, all the employer has to do is prove, is meet the burden to show the amount and extent of work as a matter of just and reasonable inference. And I think the burden always being on the employer is entirely consistent with the burden-shifting analysis in Mount Clemens because what that ultimately means is that when it comes to matters of precision, a minute here, a minute there, that's ultimately on the employer. The burdens on those sorts of issues are on the employer. And so if the employer wants to come back and say, we have records that show that the employees only worked this amount of time and that any time in excess was de minimis, the employer is free to do that, but it's the employer who should have the burden to do that. And that's, again, entirely consistent with this idea that employees should not be penalized for some lack of precision in their back-wage calculations or in their assertion that they performed uncompensated work. If part of the determination about whether something is de minimis is whether it's administratively feasible to do record-keeping, to accurately record it, why was it appropriate for the district court here to reach that at summary judgment rather than let that go initially as a question to the jury? Aren't they tied together in terms of whether this was de minimis or not? I believe that the only issue that the district court ruled on at summary judgment was the regularity issue, not on administrative feasibility. Administrative feasibility and aggregate amount of time were the issues that were left for the jury. And I think it was based on the record that was before the district court at summary judgment and frankly reaffirmed by the record at trial, there was no dispute that the work at issue here was being performed on a regular basis. But the district court ruled on record-keeping at summary judgment. Oh, I'm sorry. You were asking about the summary judgment in favor. Yeah, I think there's no precedent for there being a de minimis defense to record-keeping. The de minimis principle in the interpretive regulations only comes into play in the interpretive regulations on paying time for hours worked. The Secretary's record-keeping regulations in 29 CFR Part 516 are entirely different, and there's no de minimis principle recited in those regulations. But, again, it seems that we're going in circles, because if what you are required to record for the record-keeping section is what can be, what is administratively feasible to take down, de minimis time is not by definition, then how could there be a violation before you've made a determination about whether this is administratively feasible to record or not? That's where, again, the basis on which the district court found liability under the FLSA and liability under record-keeping is that there was no dispute that East Penn was not actually keeping track of the time that was being used, particularly for pre-shift activities. And you had these declarations, employees basically admitting that this time was done before shift, and you had undisputed evidence showing that the donning work in particular was done pre-shift. I think those are the core bases on which the district court granted summary judgment on those issues and then left the rest of the issues for the jury to work out. So does the answer to whether there was error in addressing record-keeping and summary judgment depend on whether you characterize what's at issue as the reasonable amount of time plus something that may or may not be de minimis versus keeping track of the entire period of time? I think the answer to the record-keeping question, again, is fairly straightforward. This is an employer that was paying only for shift time when it fully knew that its employees were engaged in work well before the shift started. And it was not keeping track of those hours. It was not keeping track of the time spent in donning. It was not putting in place any rules to prevent employees from donning off the clock. And so I think that disposes of the record-keeping question by itself. If it allocated, say there's evidence in the record to show that five minutes is more than enough for the activity that's in question. Yes. Under those circumstances, would you say that there's a record-keeping violation because they weren't keeping track of actual time? They were instead allocating more than actual time for compensation? The reason there's a record-keeping violation is I think some of it comes down to the idea that all time within the workday is compensable. And so what East Penn actually is required to do under Alvarez is figure out when are its employees starting work and when are its employees stopping work. And there's no dispute that it did not do that. It just paid everybody by shift time. Now, as for whether or not, you know, the jury in this case most likely, given the nature of the award compared to what we saw, you know, I think it's most likely that the jury wasn't that concerned about kind of the in-between time when somebody may have been taking a couple of minutes to read a newspaper or something, even though under a strict reading of the continuous workday principle that time is compensable. It was just awarding the time that believed was probably spent in what one might call productive activities. But I think the reason that the record-keeping rule is important under Alvarez is that, you know, the employer needs to make sure that the work is actually being done on paid time. And that's what East Penn did not do here. It knew that the work was being done on unpaid time, sometimes well in advance of shift start, and it didn't track that. It took no steps to ensure that employees performed these activities on paid time. And it just continued with paying by shift time and saying that its records were just the records of shift time. So is your answer yes, it would still be a violation if five minutes were more than enough, it covered more than actual time, but not keeping track of actual time, according to the secretary, would be a violation? It would be a violation, yes, because under the continuous workday principle, you have to keep track of the actual hours worked, and you are not allowed to simply permit employees to work off the clock. And that's why there would absolutely be a record-keeping violation. That's the whole point of record-keeping is making sure we know when employees are actually working. I see that I have only 30 seconds remaining. Does the court want to hear anything on reasonable time versus actual time? You can speak to the department's shifting positions over time. I'm sorry? The department's shifting positions over time and what we should make of that in terms of any deference we would give to its current or most recent position. So I think with regards to, I think Your Honor is alluding to the 1956 opinion letter that East Penn has cited. And I think that letter needs to be viewed in the context of all of the department's interpretations of the years, including the interpretations that it set forth in the regulations and its more recent interpretations when it's made clear that an actual time standard applies. I also think that if you look at the question that was being asked in that letter, the question that was being asked really was, well, do I really have to track, you know, the amount of time that everybody comes in and everybody leaves? And that I think is something of a straw man that East Penn has set up in this case, is that our position equates to a ruling that the time that every single employee needs to have their time tracked down to the minute. And that's never been the department's position. That's not the department's position in this case. The department's position is that everybody has to be paid for the actual time in which they work, and therefore that if you're going to say, okay, five or ten minutes is reasonable for Don, you have to ensure that the activity takes place during that time and not before that time. And so I think that that's the issue that the 1956 opinion letter was really getting at was, do I really have to track everybody's time? And, again, I think the answer is no, as long as you take steps, and this is what our other interpretive regulations make clear, as long as the employer takes steps to ensure that if the employer is required to take steps and enforce rules to ensure that work is not being done on unpaid time. And, again, I think viewed in the context of all of our other regulations, the regulations that prohibit one-sided rounding in favor of employers, prohibit arbitrarily failing to count any part, however small, of an employee's regular working time, I think all of those regulations make clear that employers must pay for the actual work performed. And to the extent that a very old opinion letter that has, you know, more recently been relegated to a section of our field operations handbook only on collective bargaining, to the extent that that letter might be inconsistent, we think that the weight of the case law and the weight of the regulations certainly outweigh that opinion. And I would emphasize that the fact that it's now in the collective bargaining section is entirely consistent with the fact that if employers and employees want to come up with their own rules for compensating this time, if they want to pay reasonable time, if they want to say this time doesn't count, that's something that Congress in Section 2030 explicitly gave employers and employees the ability to do. If you have a collective bargaining agreement, either under the express language of that agreement or by customer practice, you can develop your own rules for clothes changing and showering time. This is not such a case. This is a case where East Penn unilaterally imposed these rules, unilaterally decided, we think that only this amount of time is reasonable for these activities, and therefore we're not going to pay for more. And that's something that the FLSA clearly prohibits. Thank you. Thank you for Mr. Mueller on rebuttal. Just a few points. Let me start with the last one. In the BUSC decision, Integrity Staffing Solutions versus BUSC, which gave more recent definition to the integral and indispensable test, the Supreme Court in the last paragraph refuted my friend from the government's last point by saying that in every workplace the employers can bargain with the employees about how much time to be paid for these preliminary and post-preliminary activities. And it cited Section 4A1 of the Act, which is not the collective bargaining provision. So my point is that his point applies in all workplaces. It's because the statute would allow payment for anything for which there's an agreement, a custom or practice to pay for. I don't think there's any such agreement here. No, there is no such agreement here. But he's saying that the reasoning of it should only apply to collective bargaining situations, and the Supreme Court made clear in the last paragraph of BUSC that's not true. Judge Krause, I think you asked my friend from the government about whether there's a de minimis exception to recordkeeping, and I believe he said no. The fact of the matter is the Secretary's recordkeeping regulation at 785.47 says that in recording working time under the Act, insubstantial or insignificant periods of time, blah, blah, blah, may be disregarded. And it cites Anderson v. Mount Clemens Pottery, which makes my point that this is a liability issue. It's not a damages issue. In the first instance, you don't even need to track it if it's de minimis. I want to just go back to something that both sides have discussed. And the burden on de minimis should be on the employees because this court and I think most courts have put the burden on integral and the dispensable and 3.0 on the employees or the Secretary of Labor. It would just be an odd rule to say that the employees have the burden on most of the issues, but the employer has the burden on this one issue. The courts should treat all the exclusions as the burden should be on the employees or the Secretary and only exemptions, which this clearly is not. If we go your way on that, wouldn't it be the first circuit court that issues a presidential opinion in favor of the employer or putting the burden on the employee, I should say, and you have two, three, four circuits against you? Well, I was going to address that point, too. The Sixth Circuit and the Second Circuit, you would be, except for the Ninth Circuit, which I guess is sort of ruled in that footnote in Ruddy v. Lojack, which just completely mischaracterizes the Supreme Court's decision in Anderson, and there's no reasoning. It's a single footnote. The Sixth Circuit and the Second Circuit decisions are both canine cases, and that's very important because the last sentence of the discussion in the Second Circuit says, our holding is limited to canine officer duties because dogs, unlike people, are going to do what they're going to do, and we have to let the officers take the time it takes to give care to those dogs, and it expressly distinguished the reasoning about the canine officers from Dawning and Doffing, where it says people can take purposely extra long time to dress and increase their work day in a way that the dogs and the officers can't. So you're saying those circuit decisions went to the dogs? Yeah. Well, I'd like to see that line in the opinion. But the Sixth Circuit expressly relies on hold sat full in the Second Circuit, and so I'd say those aren't precedential against us at all. They're not dressing time cases. The reasoning doesn't apply. And the Fourth Circuit decision in Perez v. Mount Air Farms was about the standard for expert testimony. It just said you don't have to use fastest time as a measurement. The expert could use the mean time, and the Tenth Circuit in Garcia v. Tyson just cited Perez saying it's okay for an expert to use average time. Can I make one more point? Yes. In terms of who could have tracked the time here, which was a lot of discussion in the last argument, I agree this is the only factor that might lean towards the employer on who carries the burden on de minimis, but keep in mind here, Wage and Hour investigated this company for two years before it filed suit. Its time study expert had over 1,000 clips of employees doing these activities, and they listed 526 employees who they said would talk about how much time they spent and whether it was paid or unpaid. So this is not a situation where we're uniquely in possession of the information, and that applies both for de minimis and actual time. Both sides were quite capable of addressing these proofs here, and they took on that burden, I would argue, in their complaint in paragraphs 3 and 4. Thank you. Thank you, Mr. Mueller. We would also appreciate a transcript of this matter, again, spoke by the parties, and thank counsel for a really superb argument this morning from both of you. Thank you. And we will take this case under advisement as well. Thank you.